**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No.:  08 C 788 |
| v. | ) ) | Judge Coar |
| ROSELLE FARMERS LUMBER COMPANY, an Illinois corporation, a/k/a ROSELLE LUMBER COMPANY, | ) ) ) ) | Magistrate Judge |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF SUMMARY JUDGMENT**

NOW COME the Plaintiffs, TRUSTEES OF THE SUBURBAN TEAMSTERS OF

NORTHERN ILLINOIS PENSION FUND, pursuant to FRCP 56 and L.R. 56.1(a)(3), and move

for the entry of summary judgment against ROSELLE FARMERS LUMBER COMPANY, a/k/a

ROSELLE LUMBER COMPANY ("Roselle"), as to liability and damages.  In support of its

Motion, Plaintiffs submit the following Memorandum of Law.  (Plaintiffs' Statement of

Uncontested Facts is referenced as (L. R. 56.1 ¶ __).)

**STATEMENT OF FACTS**

The Fund administered by the Plaintiffs ("Fund") is a multiemployer pension plan within

the meaning of Section 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3).

(L. R. 56.1 ¶ 2.)  The Fund is primarily funded by contributions remitted by multiple

participating employers pursuant to negotiated collective bargaining agreements on behalf of

employees of the participating employers.  (L. R. 56.1 ¶ 3.)  The Fund is administered at 1275 W.

Roosevelt Road, West Chicago, Illinois.  (L. R. 56.1 ¶ 7.)  All principal and income from such

contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Fund and paying the administrative expenses of the Fund.  (L. R. 56.1 ¶ 4.)

Defendant Roselle is or was an Illinois corporation and is or was engaged in an industry affecting commerce.  (L. R. 56.1 ¶ 5.)  Roselle was subject to a collective bargaining agreement between itself and Teamsters Local 673 requiring Roselle to make contributions to the Fund on behalf of certain of its employees.  (L. R. 56.1 ¶ 9.)  From at least the year ending December 31, 1997 and into the year ending December 31, 2006, Roselle employed persons represented for collective bargaining by Teamsters Local 673, whose members participate in the Fund, and made pension contributions for those employees, as called for in the collective bargaining agreement. (L. R. 56.1 ¶¶ 8, 10.)

Roselle did not employ any persons engaged in operations requiring contributions to the Fund after 2006.  (L. R. 56.1 ¶ 12.)  As a result, Roselle did not contribute to the Fund on behalf of its employees for work performed after 2006.  (L. R. 56.1 ¶ 11.)  Because of these facts, Roselle permanently ceased to have an obligation to contribute under the plan.  *See infra.* II.A.1.

On January 23, 2007, Fund Manager Jose M. Colin, on behalf of the Trustees, mailed Roselle a letter stating that, pursuant to the United States Code, the plan's sponsor was notifying Roselle of the amount of withdrawal liability that it had incurred due to the cessation of its obligations to contribute to the Fund.  (L. R. 56.1 ¶ 13.)  Roselle shortly thereafter received the letter on or about January 25, 2007.  (L. R. 56.1 ¶ 14.)  Specifically, the letter stated that Roselle had incurred $81,614.00 in withdrawal liability.  (L. R. 56.1 ¶ 15.)  The letter also stated that Roselle's quarterly payment schedule required a quarterly payment of $13,431.00 due on February 1, 2007, five further quarterly payments of the same amount, and a final payment of

$5,355.00 due on August 1, 2008.  (L. R. 56.1 ¶ 15.)  Further, the letter stated that failure to make

any payment when due would make the entire balance immediately due and payable.  (L. R. 56.1

¶ 15.)  The letter also notified Roselle of ERISA Sections 4219 and 4221 for a description of

rights it might have in connection with the assessment of withdrawal liability.  (L. R. 56.1 ¶ 15.)

Roselle neither requested a review of the withdrawal liability within 90 days of receipt of

the January 23, 2007 letter, nor did it at any time request arbitration of its dispute with the Fund.

(L. R. 56.1 ¶¶ 24-25.)  The amount of withdrawal liability, and the payment schedule, were

calculated by the Fund's actuary, using the presumptive allocation method, allowed for under

Section 4211(b) of ERISA, 29 U.S.C. § 1391.  (L. R. 56.1 ¶¶ 16-17.)

Roselle admits that it has never made any withdrawal liability payments to the Fund.  (L. R.

56.1 ¶ 19.)  On April 2, 2007, Mr. Colin notified Roselle in a letter, again sent on behalf of the

Trustees, that Roselle had apparently failed to make its first payment due February 1, 2007, and

was therefore in default.   (L. R. 56.1 ¶ 20.)    Roselle thereafter received the letter.  (L. R. 56.1 ¶

21.)  On January 25, 2008, John J. Toomey, counsel for the Trustees, notified Roselle, in a letter

mailed on behalf of the Trustees, that the February 1, 2007, May 1, 2007, August 1, 2007, and

November 1, 2007 payments were overdue.  (L. R. 56.1 ¶¶ 22.)  Roselle received this letter on or

about January 30, 2008.  (L. R. 56.1 ¶¶ 23.)  In the letter Mr. Toomey also notified Roselle that

> Roselle Farmers Lumber Company is hereby notified that, based upon the failure to pay
> the February 1, 2007 installment within 60 days after its receipt of written notification
> that its February 1, 2007 payment was overdue and within 61 days of the period
> described in Section 4219(b)(2)(A) of ERISA, the Trustees declare Roselle Farmers
> Lumber Company in default of its withdrawal liability payment obligations and are
> accelerating and requiring immediate payment of the full amount of withdrawal liability
> assessed of $81,614.00 together with interest calculated from the February 1, 2007 due
> date of the missed payment giving rise to the default.

(L. R. 56.1 ¶ 22.)

Again, to this day Roselle has made no payments toward its withdrawal liability.  (L. R. 56.1 ¶ 19.)  Because of its default, Plaintiffs brought suit in this court, seeking to collect the entire amount of withdrawal liability as is their duty under the law.

## ARGUMENT

Plaintiffs will show as a matter of law that Roselle has incurred withdrawal liability and has waived its defenses in not requesting arbitration of the imposition of withdrawal liability.  In addition, Plaintiffs will demonstrate that they have complied with all requirements under the law to give notice to Roselle of its withdrawal liability, that Roselle has defaulted in its payment of withdrawal liability, that Plaintiffs have complied with all requirements under the law to give notice to Roselle of its default in payment of its withdrawal liability, and that because of Roselle's default the entire amount of withdrawal liability, plus applicable interest, costs, and attorneys fees, are due to Plaintiffs.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.56(c); *Kamler v. H/N Telcom. Servs., Inc.*, 305 F.3d 672, 677 (7th Cir. 2002).  A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fritcher v. Health Care Servs. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002).

The movant bears the burden of establishing that no genuine issue of material fact exits.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928,

931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts

that demonstrate the existence of a genuine issue for trial. Rule 56(e); *Celotex*, 477 U.S. at 324. A

scintilla of evidence in support of the non-movant's position is insufficient, and the non-movant

"must do more than simply show that there is some metaphysical doubt as to the material fact."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *see also Anderson*, 477

U.S. at 250.

## II. <u>ANALYSIS</u>

**A.    The Fund is Entitled to Summary Judgment Because the Fund Determined the Amount of Withdrawal Liability, and a Payment Plan Thereto, the Fund Gave Proper Notice, and Roselle did not Request Arbitration**

### 1.    Roselle effectuated a complete withdrawal when it ceased to employ workers covered by the plan

Under the Employee Retirement Income Security Act ("ERISA") and the Multiemployer

Pension Plan Amendments Act ("MPPAA"), an employer who effectuates a complete withdrawal

from a multiemployer pension plan "is liable to the plan in the amount determined . . . to be the

withdrawal liability." 29 U.S.C. § 1381. Roselle completely withdrew from the Fund by the end

of 2005. In doing so both requirements of 29 U.S.C. § 1383 were met: "[A] complete withdrawal

from a multiemployer plan occurs when an employer (1) permanently ceases to have an obligation

to contribute under the plan, or (2) permanently ceases all covered operations under the plan."

It is undisputed that Roselle did not employ any persons engaged in covered operations

requiring contributions to the Fund after 2006. (L. R. 56.1 ¶ 12.) It is also undisputed that Roselle

made no contributions to the Fund on behalf of any of its employees for work performed after

2006. (L. R. 56.1 ¶ 11.) As the following case law indicates, these facts constitute a permanent

cessation of any obligation to contribute under the plan, and a permanent cessation of all covered

operations under the plan.

The Seventh Circuit has stated that "'covered operations' [under § 1383(a)(2)] refers to those operations which are covered by the collective bargaining agreement (through the relevant bargaining unit definition) for which the employer must contribute to [the] pension plan." *Trustees of Iron Workers Local 473 Pension Trust v. Allied Products Corp.*, 872 F.2d 208, 214 n.10 (7th Cir. 1989). Thus, once these operations cease a complete withdrawal has occurred.

The issue of a permanent withdrawal through a company no longer employing any covered employees arose in *Central States Southeast & Southwest Areas Pension Fund v. Bellmont Trucking Co.*, 788 F.2d 428 (7th Cir. 1986). There, Bellmont Trucking filed for bankruptcy. *Id.* at 430. In the year preceding its bankruptcy filing, it employed eight Teamsters, five of whom retired and three of whom went to work for other employers who were "obligated to make contributions to the [same] Fund on their behalf." *Id.* Because these three former employees were still working, and were still having pension contributions made on their behalf to the very same fund, Bellmont argued that there should be no imposition of withdrawal liability.

The Seventh Circuit rejected Bellmont's contentions. It stated that ERISA provides for a number of carefully drawn exceptions to the finding of a complete withdrawal. Among these are changes in corporate structure and the transfer of employees between employers within the same control group. *See id.* at 431-32. Because Bellmont did not fit into any of these exceptions, the court held that Bellmont incurred withdrawal liability.

Similarly, in *Brentwood Financial Corp. v. Western Conference of Teamsters Pension Trust Fund*, 902 F.2d 1456 (9th Cir. 1990), Brentwood Financial employed only one employee covered under the applicable pension plan. The employee worked for Brentwood until April, 1983. His employment then ceased but Brentwood continued doing business. *See id.* at 1458.

In applying this fact to the related issue of when the statute of limitations begins (an issue not applicable here), Judge O'Scannlain stated that the cessation of the employee's employment effectuated a complete withdrawal: "Here, Brentwood contributed to the plan on behalf of one bargaining-unit employee and continued covered operations until April 1983. Thus, it did not completely withdraw until that time." *Id.* at 1459.

Just as with the employers in *Bellmont* and *Brentwood*, Roselle effectuated a permanent withdrawal from the plan when it ceased to employ any workers covered by the plan, whether or not it continued operating past the year 2006. In so doing it permanently ceased to have an obligation to contribute under the plan and permanently ceased all covered operations under the plan. In turn it satisfied the criteria of 29 U.S.C. § 1383 for a complete withdrawal.

### 2. In permanently withdrawing from the Fund, Roselle incurred $81,614.00 in withdrawal liability

In withdrawing from its Fund obligations, Roselle incurred withdrawal liability. This is because under 29 U.S.C. § 1381, when an employer withdraws from a multiemployer plan, the employer becomes immediately liable for its proportionate share of unfunded vested benefits. *See Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Rentar Indus.*, 951 F.2d 152, 153 (7th Cir. 1991). The amount of withdrawal liability is determined by the relevant multiemployer pension fund, which subsequently must notify the employer of that amount and collect that amount. 29 U.S.C. § 1382; *Cent. States, Southeast and Southwest Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 666 (7th Cir. 2005).

In notifying the employer of the amount of withdrawal liability, the fund will include a schedule of payments, 29 U.S.C. § 1399(b)(1)(a)(ii), calculated through the provisions discussed in 29 U.S.C. § 1399(c). If a payment is not timely made, and then is not cured within 60 days of notice of the missed payment, the employer is in default and the fund may demand as due the

entire amount of outstanding withdrawal liability.  29 U.S.C. § 1399(c)(5); *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 899 (7th Cir. 1988).

In this case, the Fund determined that Roselle withdrew from the Fund and that the company incurred withdrawal liability in the principal amount of $81,614.00.  Roselle admits that it received a notice and demand for payment of withdrawal liability dated January 23, 2007, a past due notice for payment of the withdrawal liability dated April 2, 2007, and a default notice dated January 25, 2008.  (L. R. 56.1 ¶¶ 13-14, 20-23.)  Roselle has also admitted that it has not paid any of the withdrawal liability to the Fund.  (L. R. 56.1 ¶ 19.)  Since Roselle had not cured its missed payments within 60 days of the April 2, 2007 notice, Roselle is in default and the Fund may demand as due, and is now entitled to, the entire amount of outstanding withdrawal liability.

3.   **Roselle has waived any challenge to the Fund's assessment of withdrawal liability because it did not request review or arbitration within 90 days of the Fund's notice**

If an employer wishes to contest the withdrawal liability assessment, it must "ask the plan to review its assessment, 29 U.S.C. § 1399(b)(2), and if still dissatisfied, may initiate arbitration" pursuant to 29 U.S.C. §1401(a)(1).  *Central States, Southeast and Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 888 (7th Cir. 1992); *Central States, Southeast and Southwest Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994) (quoting *Ditello*).  "'Arbitration of a dispute concerning a plan's determination of withdrawal liability is mandatory' and if an employer fails to timely initiate arbitration, 'the amount of withdrawal liability assessed by the plan becomes due and owing, and the plan can sue to collect it.'"  *Bell Transit*, 22 F.3d at 707 (quoting *Ditello*, 974 F.2d at 888); 29 U.S.C. § 1401(a)(1); *see also Central States, Southeast and Southwest Areas Pension Fund v. Bomar Nat., Inc.*, 253 F.3d 1011, 1016 (7th Cir. 2001) ("'Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a

determination made under sections 1381 through 1399 of this title' must be resolved through arbitration." (quoting 29 U.S.C. § 1401(a)(1))). Furthermore, even if an employer requests a review or a review followed by arbitration, the requests "do[ ] not suspend the employer's obligation to pay in accordance with the schedule of payments assessed by the plan." *Id.* (citing *Jaspan v. Certified Industs., Inc.*, 645 F. Supp. 998, 1004 (E.D.N.Y. 1985)). The determination of the plan sponsor need only be reasonable and on the evidence available. *See Iron Workers Local 473*, 872 F.2d at 213. Even if an employer has a meritorious challenge to the Fund's determination, in failing to request arbitration the employer defaults in its ability to do so. *See Robbins*, 866 F.2d at 899 ("Since Congress made it mandatory to resolve withdrawal disputes between an employer and a plan sponsor through arbitration (29 U.S.C. § 1401(a)), Chipman cannot bypass arbitration and litigate a defense to a withdrawal liability claim.").

Roselle failed to initiate review or arbitration within the time limits specified in 29 U.S.C. § 1399(b)(2) or § 1401(a)(1), and the time to do so long since passed. An employer must request review of the notice of withdrawal liability within 90 days of receipt of the notice. 29 U.S.C. § 1399(b)(2). In turn, an employer may initiate arbitration within 60 days after the earlier of 1) the date of notification to the employer of the fund's assessment of a request for review, or 2) 120 days after the date of the employer's request for such review. 29 U.S.C. § 1401(a)(1). Here, Roselle did not request a review within 90 days of the notice of withdrawal liability, (L. R. 56.1 ¶ 27.), and *even if* it had done so (which, again, it did not), Roselle did not initiate an arbitration proceeding within 120 days of a request for review. (L. R. 56.1 ¶ 26). This is because it *never* requested arbitration. Moreover, Roselle is in default within the meaning of 29 U.S.C. § 1399(c)(5), since it did not make any of the interim withdrawal liability payments, even after receiving the Fund's past due notice on behalf of the Trustees stating that it was in default. *Chicago Truck Drivers, Helpers*

*and Warehouse Union (Indep.) Pension Fund v. Century Motor Freight*, 125 F.3d 526, 533 (7th Cir. 1997).  Therefore, Roselle has waived the right to challenge the withdrawal liability assessment, is in default on the payment of the assessment amount, and the full amount of the withdrawal liability sought by the Fund is now due, together with interest, liquidated damages, attorneys fees, and costs.

**CONCLUSION**

This Court should grant Plaintiffs' Motion for Summary Judgment.  Plaintiffs have demonstrated that entry of summary judgment is appropriate as:

1.    There is no issue that Roselle completely withdrew from the Fund.

2.    There is no issue that the Fund determined the amount of withdrawal liability, and the accompanying schedule of payments, that Roselle owes withdrawal liability payments to the Fund, that the Fund notified Roselle of the withdrawal liability and schedule, and that the Fund notified Roselle when payments were past due and when it was in default.

3.    Roselle did not request review or arbitration of withdrawal liability.

WHEREFORE, Plaintiffs pray for entry of summary judgment as to liability and an award of damages for contributions owed plus all relief required pursuant to 29 U.S.C. 1132(g)(2).

Respectfully submitted,

TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND,

By:    /s/ Anthony B. Sanders
       One of their Attorneys

JOHN J. TOOMEY
ANTHONY B. SANDERS
ARNOLD AND KADJAN
19 W. Jackson Boulevard
Chicago, Illinois  60604
(312) 236-0415